UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE SUBPOENA ISSUED TO GRAGIL ASSOCIATES, INC. in Managed Care Solutions, Inc., Plaintiff, v. Essent Healthcare, Inc., Defendant. S.D. Fla. No. 09-60351 | CIVIL ACTION NO. |

## MOTION OF NON-PARTY WITNESS GRAGIL ASSOCIATES, INC. FOR ORDER QUASHING DOCUMENT SUBPOENA

### INTRODUCTION

Non-party witness Gragil Associates, Inc. ("Gragil") has received from the plaintiff Managed Care Solutions, Inc. ("MCS") a subpoena requiring it to produce thousands of documents generated over the course of nearly four years. The subpoena is procedurally improper because it was issued from the wrong court and requires production in Florida. Moreover, it seeks documents that are undiscoverable because they are irrelevant, beyond the scope of discovery, and include privileged personal health and financial data. Finally, the requested materials are extremely voluminous; producing them will be time consuming, expensive, and disruptive to Gragil's operations. For these reasons, pursuant to Fed. R. Civ. P. 45(c)(3) and the inherent authority of this Court to regulate matters before it, Gragil moves for an order quashing the subpoena.

## ESSENTIAL PERTINENT BACKGROUND

1. In its amended complaint, MCS alleges that it had a contract with the defendant Essent Healthcare, Inc. ("Essent") pursuant to which MCS was to be the exclusive provider of accounts-receivable collection services on so-called third-party payor accounts. MCS asserts that Essent did not honor the exclusivity provision of the contract. (O'Connor Aff. ¶ 2, Ex. A, ¶¶ 7-8, 11, 16-26)[1]

2. Gragil provided collection services to an Essent institution, but <u>only</u> as to so-called self-pay accounts. (Gilbody Aff. ¶¶ 2-4; O'Connor Aff. Ex. E) Even MCS's CEO admitted that self-pay accounts <u>differ</u> from the third-party payor accounts that were the subject of the MCS/Essent contract, and that that contract did not cover collection of self-pay accounts. (O'Connor Aff. ¶ 5, Ex. D, pp. 38-79) Gragil provided <u>no</u> services to Essent as to third-party payor accounts, and has no information as to the MCS/Essent relationship regarding third-party payor accounts. (Gilbody Aff. ¶¶ 2-4, 7)

3. The Court in the Southern District of Florida has ruled that MCS was entitled to discovery of the contracts between Essent and other collection agencies like Gragil that worked only on self-pay accounts, but nothing more. The Court ruled that MCS could have no further discovery as to such relationships, because services related to self-pay accounts were not relevant to MCS's claims. (O'Connor Aff. ¶ 4, Ex. C, pp. 19-34)

4. Essent produced its contract with Gragil to MCS. A healthcare industry expert reviewed the contract and provided sworn deposition testimony that there was no "conflict or overlap" between the MCS/Essent contract and the Essent/Gragil contract. (O'Connor Aff. ¶ 6, Ex. E, pp. 172-180)

---

[1] Citations are to the accompanying Affidavits of John J. O'Connor and William L. Gilbody.

5. Formal discovery closed on April 1, 2010. (O'Connor Aff. Ex. F) Even though MCS has had the Gragil contract for months, MCS did not serve its subpoena on Gragil until July 23, 2010. (O'Connor Aff. Ex. B) The Court's docket confirms that Essent's summary judgment motion has been fully briefed by all parties and is awaiting decision by the District Court in Florida.

6. After reviewing the subpoena, counsel for Gragil reminded MCS's counsel that Gragil only worked on self-pay accounts, not the third-party payor accounts at issue in MCS's suit. Gragil's counsel also advised MCS that Gragil had no evidence relevant to MCS's allegations. Gragil's counsel asked in writing if MCS had any evidence indicating that Gragil had any involvement with third-party payor accounts. MCS's counsel never responded and provided no such evidence. (O'Connor Aff. ¶ 8, Ex. G)

7. The materials that the MCS subpoena seeks relate to thousands of debtor accounts and are voluminous. The materials comprise tens of thousands of pages and will fill several banker's boxes. It will take Gragil employees many days and hours and require much effort and expense to assemble and copy all of the materials. Gragil is a small, understaffed company. This task will be expensive and burdensome for Gragil, and will disrupt its operations significantly. (Gilbody Aff. ¶¶ 5-7)

8. Most of the responsive materials contain the confidential and protected personal health and financial information of thousands of third-parties who are not involved in this litigation and have had no notice of the subpoena and no opportunity to be heard as to its effects on their interests. Gragil is obligated to notify them of actual or threatened disclosure of their personal information. If Gragil is required to provide such notice or to redact the documents,

3

that will take even more time than simply assembling and copying the records. This will further disrupt Gragil's operations. (Gilbody Aff. ¶¶ 5-7)

9. Gragil notified MCS of its objection to the subpoena and requested that MCS withdraw it. There was no response. (O'Connor Aff. ¶ 8, Ex. G)

ARGUMENT

I. The Subpoena is Procedurally Improper.

MCS's subpoena requires Gragil to produce documents at the office of plaintiff's counsel in Miami, Florida. (O'Connor Aff. Ex. B) It does not require that Gragil appear for a deposition or for trial. Federal Rule of Civil Procedure 45(a)(2)(C) provides in pertinent part that subpoenas requesting only documents shall issue "from the court for the district where the production or inspection is to be made." In this case, the subpoena is issued from this Court, not the District Court sitting in Miami where the production is to be made. (O'Connor Aff. Ex. B) Furthermore, the subpoena requires production well over 100 miles from Gragil's Massachusetts location, in violation of section (c)(3)(A)(ii) of rule 45. The subpoena is thus procedurally improper and should not be enforced.

II. The Requested Materials Are Irrelevant To The Issues In The Litigation.

The gravamen of MCS's suit is that Essent breached a contract with MCS pursuant to which Essent promised to make MCS its exclusive provider of collection services as to third-party payor accounts. (O'Connor Aff. Ex. A, ¶¶ 7-8, 11, 16-26) But Gragil provided Essent no services as to third-party payor accounts. Rather, it worked only on so-called self-pay accounts. (Gilbody Aff. ¶¶ 2-4) All of the voluminous materials that Gragil has regarding its work for Essent relates to a type of account that was not a subject of the MCS/Essent contract and is not at issue in Essent's suit. In other words, MCS alleges that Essent breached a contract pursuant to which MCS alone was to work on Essent's Type A accounts. (O'Connor Aff. Ex. A) Gragil

4

provided Essent services only as to Type B accounts, and the documents that Gragil has relate only to Type B accounts. (Gilbody Aff. ¶¶ 2-4, 7) The Gragil documents therefore have no tendency to make more or less probable the existence of the breach of contract alleged by MCS as to Type A accounts. Gragil's documents are all irrelevant.

III. The Requested Materials Are Beyond The Scope Of Discovery.

Formal discovery closed on April 1, 2010. (O'Connor Aff. Ex. F) Moreover, the District Court in Florida ordered that the only discovery that MCS was entitled to from non-parties like Gragil that provided services only as to self-pay accounts was copies of the contracts between Essent and the self-pay collectors. (O'Connor Aff. ¶ 4, Ex. C, pp. 19-34) The relevant Gragil contract already has been produced to MCS. (O'Connor Aff. Ex. E [depo. ex. 173]) Indeed, it was an exhibit and the subject of questioning at MCS's deposition of a healthcare industry expert, who testified that there was no overlap between the services to be provided by Gragil under its contract with Essent and those at issue in the MCS/Essent contract. (O'Connor Aff. ¶ 6, Ex. E, pp. 178-180)

MCS already has received all of the discovery that it might arguably be entitled to concerning Gragil. The materials MCS now seeks fall far outside the scope of discovery as ordered by the District Court in Florida. MCS's subpoena to Gragil is an improper, eleventh-hour effort to make an end run around the Court's unambiguous limitation on discovery. This Court should not countenance this stunt.

IV. The Requested Materials Include Confidential And Protected Personal Health And Financial Information Of Numerous Persons Who Have Had No Notice Of The Subpoena And No Opportunity To Be Heard.

Most of the documents that are responsive to MCS's subpoena contain protected personal health and/or financial information of the debtors whose accounts Gragil handled. The privacy interests of literally thousands of debtors are at stake. Pursuant to multiple provisions, including

5

requirements appearing in HIPAA, the HITECH Act, the Fair Debt Collection Practices Act, Gramm-Leach-Bliley, FTC Regulations (74 Fed. Reg. 42962 [Aug. 24. 2009]), and state privacy laws such as G.L. c. 93H and 201 CMR §§17.00-17.05, Gragil must secure this confidential information, protect it from disclosure, and notify affected individuals of actual or threatened disclosure. Gragil also has contractual and ethical obligations to preserve the privacy of this information. (Gilbody Aff. ¶¶ 5-7) These important legal and ethical obligations trump any interest MCS may have in obtaining the subject materials. And considering further that the requested documents have no relevance to MCS's allegations and are outside the scope of discovery in any event, there is absolutely no reason why the Court should override these privacy protections.

V.  Responding To The Subpoena Will Be Unduly Burdensome And Expensive.

Gragil president William Gilbody has sworn that providing a full response to the MCS subpoena will be very time-consuming, expensive, and disruptive to Gragil's operations. He explains that Gragil is a small, understaffed company. It will take Gragil employees a week or more to locate, organize, and copy the materials that are subject to the subpoena. Because the materials contain personal health and financial data, the affected debtors are entitled by law to notice of the possible disclosure of their confidential information. Providing that notice also will be time-consuming and expensive. Full redaction of all confidential information from the records will be even more time-consuming and disruptive. (Gilbody Aff. ¶¶ 5-7)

This is precisely the sort of undue burden that Rule 45 seeks to prevent, and MCS has no reason or good faith basis for subjecting Gragil to this burden. Formal discovery closed months ago, a summary judgment motion is fully briefed and pending, and MCS has no need for or right to Gragil's documents. Gragil should be relieved of the expense and burden of responding to this improvident subpoena.

## CONCLUSION

For all of the foregoing reasons, this Motion should be granted, and the Court should issue an order quashing the subpoena issued to Gragil.

GRAGIL ASSOCIATES, INC.

By its attorneys,

/s/ John J. O'Connor
John J. O'Connor
BBO # 555251
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210-2261
(617) 951-2100
joconnor@peabodyarnold.com

Dated: August 6, 2010.

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a copy of the attached Motion of Gragil Associates, Inc. to Quash Subpoena via First Class Mail, postage pre-paid on the following:

Robert Ingham, Esq.
Ingham & Associates, PA
175 SW 7 Street Suite 1516
Miami, FL 33130

Lea Carol Owen, Esq.
Waller, Lansden, Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219

Dated: August 6, 2010.

/s/ John J. O'Connor
John J. O'Connor

727731_1